**FIRST NATIONAL BANK OF LOUISA, KENTUCKY**

v.

**The UNITED STATES.**

**No. 136–82C.**

United States Claims Court.

Sept. 5, 1984.

William H. Jackson, Louisa, Ky., for plaintiff; Jackson & Ward, Louisa, Ky., of counsel.

Robert G. Giertz, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

MEROW, Judge:

This case arises out of a breach of contract action by First National Bank of Louisa, Kentucky (Louisa) against the Small Business Administration (SBA). Louisa seeks to enforce a guarantee loan agreement. Defendant refuses to honor the agreement because it violates SBA loan regulations. Upon the findings of fact stated below, it is concluded that plaintiff has not established a valid basis for relief.

### Facts

In October 1978 Mr. Elbert See requested a $200,000 loan from Louisa to purchase the Twin Rivers Motel and Restaurant. The motel was owned as tenants in common by Mrs. Mae Newberry and Mr. Wayne Bromley. Mrs. Newberry was married to Mr. Bromley's cousin. Mr. Bromley was a director of Louisa and owned approximately 9 percent of the outstanding stock. However, Mr. See negotiated the sale primarily with Mrs. Newberry.

The loan was denied because it exceeded Louisa's legal lending limit of $165,000. Subsequently, Mr. See went to Louisville, Kentucky to inquire about a loan at the SBA's district office. Mr. See was given an application for an SBA loan. After filling out the forms, Mr. See gave them to Mr. Robert Brown, the chief operating officer at Louisa.

Mr. Brown completed Louisa's portion of the SBA application. At the time of the application, Mr. Brown had served as the chief operating officer for less than 7 months. His prior bank experience was as a "bookkeeper," a "teller" and "within the note department." Mr. See's loan was the first SBA application the bank handled. After completing the application, Mr. Brown brought the loan before the loan committee. In accordance with Louisa's standard practice and in order to avoid any conflict of interest, Mr. Bromley, a co-owner of the motel, director of the bank and member of the loan committee, abstained from participating in the loan approval. Louisa's loan committee approved the loan and forwarded it to the SBA.

The SBA reviewed the application but did not conduct any independent investigation of either the credit worthiness of the application or of Louisa's view of the desirability of the loan. The SBA was not made aware nor was it independently aware that Mr. Bromley was a seller of the property, a director and a shareholder of the bank. On November 28, 1978 the SBA approved a 90 percent loan guarantee for $200,000. Thereafter, Louisa authorized the loan and dispersed the proceeds.

Mr. See purchased the motel for $225,000. He financed the purchase with the loan from Louisa and with two notes, one for $15,000 to Mr. Bromley and one for $10,000 to Mrs. Newberry. After approximately one year, Mr. See asked for a moratorium of all principal payments on the SBA loan until the business climate improved. This request was granted and thereafter the SBA and Louisa worked closely with Mr. See to salvage the loan,

but to no avail. Mr. See subsequently defaulted.

On March 31, 1980 and August 5, 1980 Louisa requested SBA to repurchase the loan, pursuant to the SBA guaranty. Sometime between March and June 1980, while reviewing the repurchase agreement, the SBA discovered that Mr. Bromley was a director of Louisa during the period in which the SBA guaranty loan had been granted. After this discovery the SBA informed Louisa that, because of Mr. Bromley's involvement, the SBA would not purchase the guaranteed portion of the loan. The SBA based its position on the premise that Louisa violated SBA regulations and made misstatements on the loan application.

The Loan Guarantee Agreement executed by Louisa on November 22, 1978 provides:

NOW, THEREFORE, the parties agree as follows:

1. Application for Guarantee. This agreement shall cover only loans duly approved hereafter for guarantee by lender and subject to SBA's Rules and Regulations as promulgated from time to time.

The Rules and Regulations of the SBA relating to such guaranteed loans provide specifically that:

§ 122.10  *Guaranteed Loans.*

(a) *Individually Guaranteed Loans.*

\*    \*    \*    \*    \*    \*

(6) SBA shall be released from obligation to purchase its share of the guaranteed loan, unless the financial institution has substantially complied with all the provisions of these regulations and the Guarantee Agreement.

The applicable regulations also provide that, unless there is a written determination to the contrary, the SBA will not participate in loan guarantees if the proceeds are used to finance a property purchase from a bank director. 13 C.F.R. § 120.5(a) (1978) states:

§ 120.5  *Operations of eligible participants.*

(a) *General.* Lenders must observe the following regulations as a condition of their continuing eligibility as participants:

(1) *Conflicts.* SBA will not participate in any loan to a small business concern in which the lender has a direct or indirect interest. For example:

(i) SBA will not participate in any loans made to an associate;

(ii) SBA will not participate in any loan made for the purpose of financing, directly or indirectly, the purchase of real or personal property, or of services, from the lender or any Associate unless SBA shall first have made a written determination that the purchase of the property or services from the lender or Associate is in the best interests of the small business concern;

(iii) SBA will not participate in repaying or refinancing an existing loan unless SBA shall have first made a written determination, upon the basis of evidence in the file, * * *.

Question 9 of the SBA application, which Louisa completed, states:

LIST OF LENDER'S EMPLOYEES, ETC., WITH A FINANCIAL INTEREST IN THE APPLICATION.

The SBA contends this question referred to a situation in which a director held an interest in the transaction for which the loan was procured. Thus, the bank should have disclosed the fact that Mr. Bromley was a creditor of Mr. See and that Mr. See purchased the property from Mr. Bromley. However, Mr. Brown, the chief operating officer, replied "none" to the question. He interpreted it as meaning whether any bank director, etc., was in a partnership situation with the borrower.

*Discussion*

(1) *SBA Regulations*

13 C.F.R. § 126.5(a)(1)(ii) specifically prohibits the use of SBA loans, directly or indirectly, to finance the purchase of real property from the lender or any associate without a prior written determination by SBA that the loan is in the best interests of the small business concern. Louisa's loan to Mr. See lacked the required prior written determination.

■■■ Regulations reasonably adapted to the administration of a congressional act, and not inconsistent with any statute, have the force and effect of law. *G.L. Christian and Associates v. United States,* 160 Ct.Cl. 58, 65, 320 F.2d 345, 350, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963); *Schoenbrod v. United States,* 187 Ct.Cl. 627, 634, 410 F.2d 400, 403 (1969). The SBA regulations have the force and effect of law. Louisa is charged with knowledge of the regulations. *See Federal Crop Insurance v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). To apply to a contract, the regulation need not be physically incorporated into the contract. *Hills Transportation Co. v. United States,* 204 Ct.Cl. 51, 55, 492 F.2d 1394, 1396 (1974).

■■■ Plaintiff essentially argues that it was unfamiliar with the SBA application regulations and that equity should allow enforcement of the contract. Louisa seeks to invoke the doctrine of equitable estoppel. Although equitable estoppel has been held to be available to prevent the United States from denying the existence of a contractual agreement, *Pacific Gas & Elec. Co. v. United States,* 3 Cl.Ct. 329, 340 (1983), and cases cited therein, its elements have not been satisfied in this case. Equitable estoppel requires: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his inquiry. *Pacific Gas & Elec. Co. v. United States,* 3 Cl.Ct. 329, 340 (1983); *Emeco Industries, Inc. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652, 657 (1973); *United States v. Georgia-Pacific Co.,* 421 F.2d 92, 96 (9th Cir.1970). Equitable estoppel requires a demonstration of affirmative misconduct. *California Pacific Bank v. Small Business Admin.,*

557 F.2d 218, 224 (9th Cir.1977), and cases cited therein.

■ Louisa does not allege any misrepresentation by the SBA regarding the regulations. Instead, plaintiff argues its inexperience. Louisa points out that it is a small bank, that this was the first SBA loan application it completed, that the chief operating officer was inexperienced, and that the Code of Federal Regulations was not readily available to it. Although the result is unfortunate for Louisa, these facts do not free plaintiff from being charged with knowledge of applicable statutes and other requirements to an entitlement. *Biagioli v. United States*, 2 Cl.Ct. 304, 308 (1983); *see Heckler v. Community Health Services*, —— U.S. ——, —— – ——, 104 S.Ct. 2218, 1114–17, 81 L.Ed.2d 42 (1984).

### (2) *Loan Application*

■ Louisa contends that the regulation is insufficient to bar enforcement of the guaranty. Louisa argues it completed the application in good faith. In addition, Louisa points out that question 9 is ambiguous. To illustrate the reasonableness of its interpretation of the question, plaintiff uses dictionary definitions to construe its meaning. Louisa also compares the question to questions on other government forms. Although the language of the question itself is unclear, this is an insufficient basis on which to enforce the guaranty. The SBA regulations are explicit.

Plaintiff also argues it exercised due diligence in completing the SBA loan, citing *First National Bank, Henrietta v. Small Business Admin.*, 429 F.2d 280 (5th Cir. 1970). In *First National* the SBA refused to honor a guaranty because the bank made misrepresentations and rendered negligent advice to the SBA. Also, the loan disbursements were not used according to the terms of the agreement. The SBA was not required to honor the guaranty because of the bank's material misstatements. Louisa argues it fulfilled its duty to the SBA because, unlike First National, it acted in good faith. However, plaintiff did not supply the SBA with complete information concerning the loan. Louisa considered Mr. Bromley's interest sufficiently significant for him to abstain from participating in the bank's approval of the loan. It is reasonable to construe the applicable regulations to require that the SBA should also have been informed of Mr. Bromley's interest, and a written determination obtained.

Louisa also argues SBA had a duty to inform it about the significance of question 9 and the existence of the regulations. As support for this contention, plaintiff points to the doctrine of equitable estoppel. As discussed above, however, this doctrine is inapplicable in the present situation. In addition, the loan application stated it was subject to SBA regulations. Thus, despite the arguable and unfortunate ambiguity of question 9, it is clear from the regulations that written SBA approval was required for the loan.

Finally, Louisa argues it complied with 12 U.S.C. § 375(b). This statute requires interested directors to abstain from participating in approval of such loans. However, this is not the issue. Plaintiff did not comply with the applicable SBA regulation requiring a prior written determination in this circumstance.

### Conclusion

Although plaintiff acted in good faith, its actions precluded compliance with the explicit SBA regulations requiring a prior written determination. Absent this determination, SBA cannot be required to honor the guarantee agreement.

It is ORDERED that a final judgment be entered dismissing plaintiff's complaint.